# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re*: **S.S. and R.S.**

**No. 17-0552** (Webster County 17-JA-8 & 17-JA-9)

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father V.S., by counsel Andrew Chattin, appeals the Circuit Court of Webster County's May 17, 2017, order terminating his parental rights to S.S. and R.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order. Petitioner, having previously had his custodial rights to the children terminated, now appeals the circuit court's termination of his parental rights without first granting an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to the initiation of the underlying proceedings, the circuit court terminated the children's biological parents' parental rights on conditions related to controlled substances. Thereafter, petitioner and his wife, the children's biological grandparents, legally adopted the children. In April of 2014, the West Virginia State Police ("WVSP") conducted a controlled drug buy, during which petitioner sold drugs to a confidential informant in petitioner's home while the children were present. The DHHR received a referral that petitioner was selling "pain pills" in the presence of the children. The DHHR investigated the referral with the assistance of the WVSP and petitioner admitted to selling "pain pills" in his home. Subsequently, petitioner was arrested and charged with six counts of delivery of a controlled substance.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

The DHHR filed an abuse and neglect petition against petitioner and the adoptive mother. During the adjudicatory hearing, petitioner stipulated that his illegal activity of selling controlled substances in the children's presence presented a risk to the health, safety, and welfare of the children. In September of 2014, the circuit court granted petitioner a six-month improvement period. The terms and conditions of the improvement period required petitioner to abstain from drugs and alcohol, submit to random drug and alcohol screens, and comply with all other services. The circuit court also granted petitioner supervised visitation.

In January of 2015, petitioner pled guilty to two counts of delivery of a controlled substance related to the April of 2014 arrest. The circuit court sentenced petitioner to a term of incarceration of two to thirty years, and denied petitioner's motion for probation and/or home incarceration. Several days later, the circuit court held its dispositional hearing in which it terminated petitioner's custodial rights to the children. Furthermore, the circuit court ordered that petitioner could not reside with the children and that he must petition the court for visitation upon his release from incarceration.

In April of 2016, the circuit court held a hearing on petitioner's motion seeking permission to move back into the family home upon his release from prison. The circuit court denied petitioner's request. Petitioner appealed the order terminating his custodial rights and prohibiting him from living with the children. We affirmed the circuit court's decision. *See In re: S.S. & R.S.*, No. 15-0254, 2015 WL 6181419 (W.Va., Oct. 20, 2015)(memorandum decision).

In January of 2017, the DHHR filed a new abuse and neglect petition against petitioner and his wife. The petition alleged that the DHHR received a referral that petitioner was seen at the family home, against court orders. A Child Protective Services ("CPS") worker responded to the home and observed petitioner alone with R.S. An investigation revealed that petitioner moved into the home after being released from prison in November of 2016. Petitioner waived his right to a preliminary hearing.

In February of 2017, the circuit court held an adjudicatory hearing during which it took judicial notice of the prior abuse and neglect proceedings. The circuit court found that it had prohibited petitioner from contacting the children after his custodial rights were terminated. Further, the circuit court previously denied petitioner's motion seeking permission to move into the family home with the children after his release from prison. Despite knowing that he was prohibited from contacting the children, petitioner moved into the family home and resided there. Accordingly, the circuit court adjudicated petitioner as an abusing parent.

In April of 2017, the circuit court held a dispositional hearing during which petitioner moved for an improvement period. The DHHR presented the testimony of a CPS worker and the treating psychologist from the prior and instant proceedings. Both witnesses testified that they recommended termination of petitioner's parental rights based on the fact that petitioner knew he was prohibited from contacting the children and moved into the home despite court orders. The circuit court stated its displeasure that petitioner, knowing the history of how the children's biological parents' parental rights were terminated due to drug use, would expose the children to drugs in the home, causing even more trauma. The circuit court found no reasonable likelihood

2

that petitioner could correct the conditions of abuse and, accordingly, terminated his parental rights to the children.[2] It is from the May 17, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues on appeal that the circuit court erred in terminating his parental rights without first granting him an improvement period. We disagree. We have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'"*In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). The record is clear that petitioner failed to demonstrate that he was likely to fully participate in an improvement period in the instant proceedings. Petitioner argues that his successful completion of a prior improvement period demonstrates his likelihood to fully participate in an improvement period. However, petitioner's past behavior suggests otherwise. The circuit court previously terminated petitioner's custodial rights and ordered him to have no contact with the children. The circuit court thereafter denied petitioner's motion seeking permission to move into the family home after his release from prison. Thus, it is clear that petitioner knew of the restrictions the circuit court placed upon him but blatantly disregarded the orders by moving into the home with the children. As such, we find no error in the circuit court's decision to deny petitioner an improvement period.

---

[2]The adoptive mother's parental rights to children were also terminated below. S.S. has turned eighteen since this appeal was filed. R.S. is currently in the custody of an uncle with the goal of adoption in that home.

Moreover, we find no error in the circuit court's termination of petitioner's parental rights. Petitioner argues that the circuit court erred in terminating his parental rights based solely on his incarceration. With regard to incarceration, we have explained that incarceration may support the termination of parental rights based on the analysis of a series of factors. *See Cecil T.*, 228 W.Va. at 97, 717 S.E.2d at 881 (holding that "[a]lthough we have not adopted a *per se* rule regarding the impact incarceration has on a termination of parental rights decision, we have likewise not said that the facts surrounding a parent's incarceration may never form the basis for terminating parental rights."). Further, we have held that

> [w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

*Id.* at 91, 717 S.E.2d at 875, Syl. Pt. 3. Despite petitioner's argument to the contrary, the record clearly demonstrates that the circuit court relied upon several factors in addition to his past incarceration. The circuit court considered the fact that petitioner knew that the biological parents' parental rights to the children had been terminated due to drug use and that, despite such knowledge, petitioner subsequently sold controlled substances in the presence of the children. The circuit court also considered that petitioner disobeyed court orders and lived with the children. As such, we find petitioner's argument that the circuit court erred in relying too heavily on his incarceration when terminating his parental rights is without merit.

Rather, the circuit court terminated petitioner's parental rights upon findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon such findings. Moreover, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). The record is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect as evidenced by his blatant disregard of court orders directing he have no contact with the children. As such, we find no error in the circuit court's decision terminating his parental rights.

4

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 17, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 23, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker